**Marion W. CHIPMAN, Plaintiff,**

v.

**Donna E. SHALALA, Secretary of Health and Human Services, Defendant.**

Civ. A. No. 94–2361–GTV.

United States District Court,
D. Kansas.

July 18, 1995.

Jean C. Owen, Law Office of Jean C. Owen, Overland Park, KS, for plaintiff.

Robert A. Olsen, Office of U.S. Atty., Kansas City, KS, C. Geraldine Umphenour, Office of Gen. Counsel Dept. of Health & Human Services, Kansas City, MO, for defendant.

### *MEMORANDUM AND ORDER*

VAN BEBBER, Chief Judge.

This action is brought pursuant to 42 U.S.C. §§ 405(g) and 1395ff(b) for judicial

review of the final decision of the Secretary of Health and Human Services ("Secretary") denying a part of plaintiff's claim for Supplemental Medical Insurance Benefits under Part B of Medicare. The plaintiff has filed a motion for summary judgment[1] (Doc. 9) which seeks an order reversing the decision of the Secretary, while the defendant has filed a motion for an order affirming the Secretary's decision (Doc. 13). For the reasons which follow, the Secretary's decision is affirmed.

## I. Facts

Plaintiff was 70 years old at the time he received the medical treatment which is the subject matter of his Medicare claim. He had been diagnosed as suffering from atrophy of the maxilla and mandible with a resulting inability to wear dentures. Plaintiff underwent endosteal bone augmentation surgery on March 8 and March 23, 1990. Thereafter, porcelain veneer crowns were implanted in the plaintiff's mandible and maxilla on July 3 and October 1, 1990. The cost of these procedures totalled $20,000.00.

Plaintiff submitted claims for Medicare payment to Blue Cross–Blue Shield of Kansas, Medicare's carrier,[2] requesting reimbursement of the cost of the surgery and implants. The carrier denied plaintiff's claims, both initially and on subsequent review, on the grounds that the surgery and implants were excluded from Medicare Part B coverage as dental procedures. On September 21, 1991, plaintiff requested a hearing with the Social Security Administration, Office of Hearings and Appeals. A hearing was held on August 24, 1992, before an Administrative Law Judge ("ALJ") with plaintiff and his counsel present. Following is a brief summary of the medical evidence available to the ALJ and the testimony received at the hearing.

On July 31, 1989, plaintiff was diagnosed by Dean L. Doyle, D.D.S. as having atrophy of the maxilla and mandible with ensuing chronic pain. Dr. Doyle indicated that plaintiff was unable to function with a conventional prosthesis due to his severe atrophy, and that endosteal bone augmentation surgery was required.

In a letter dated November 29, 1989, Larry Sheldon, D.D.S., plaintiff's treating dentist, stated that plaintiff was unable to wear dentures due to atrophy of the alveolar ridges and body of the mandible, and that dental implants would provide the support necessary to retain dentures.

On January 19, 1990, Robert E. Delphia, M.D. wrote that an examination of plaintiff revealed marked atrophy of the gums which made it difficult or impossible to fit him with proper dentures. Dr. Delphia also found that plaintiff had a history of ulcers which made it important that plaintiff have properly digested food. He concluded that some type of dental implant was a medical necessity.

In a letter dated February 15, 1990, Lawrence D. Riffel, M.D. stated that it was medically necessary that plaintiff have a dental implant procedure due to his history of peptic ulcer disease which required proper nutrition and properly chewed food.

Dr. Doyle performed mandibular bone augmentation surgery on plaintiff on March 8 and March 23, 1990, and porcelain veneer crown work on July 3 and October 1, 1990.

Plaintiff testified at the hearing before the ALJ that dental problems in the 1970's led to the extraction of all his teeth and required him to obtain dentures. From the time he started wearing dentures plaintiff experienced instability and pain, in spite of efforts

---

1. The Tenth Circuit, in *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1579, n. 29 (10th Cir.1994), disapproved of the motion practice followed in this district pursuant to D.Kan. Rule 503. The court is in the process of amending D.Kan. Rule 503 to comply with the ruling in *Olenhouse*. For purposes of the present appeal, the court attaches no legal significance to the titles that appear on these motions and instead will, as it has always done, follow the well-established standard of review for administrative appeals and will rely only on the evidence found within the administrative record.

2. The Secretary is authorized to enter into contracts with "carriers" to administer the Medicare Part B program. The carrier, acting as agent for the Secretary, determines whether claims submitted by Part B enrollees meet Part B coverage criteria. 42 U.S.C. § 1395u(a).

by his treating dentist to adjust the dentures so that they would fit properly.

According to plaintiff's testimony, in 1986 he developed a serious bleeding ulcer condition. Plaintiff took medication for the ulcer from 1986 until some time after the surgery at issue in this case. According to plaintiff, his medical doctors attributed the ulcer problem to an inability to masticate his food properly which, in turn, was related to the denture problem.

In July 1989, plaintiff was referred to Dr. Doyle who examined him and determined that he was suffering from severe atrophy of both his maxilla and mandible. Dr. Doyle indicated that dentures would not work for plaintiff, and thought he was a "fit candidate for implants." After the surgery and implant procedures in 1990, plaintiff testified that his ulcer condition "began to calm down," and he stopped taking ulcer medication in June 1991.

Max B. Smith, Jr., a board certified oral and maxillofacial surgeon, also testified at the administrative hearing. Dr. Smith testified at the hearing as a medical expert at the ALJ's request.

Dr. Smith explained that the alveolar bone is the bone that holds the teeth on the jaws and in position. Teeth provide stimulation for the alveolar bone and enable the bone to reconstitute itself every few month. Dr. Smith stated that when teeth are removed the bone shrinks because of the lack of stimulation. Dr. Smith testified that in plaintiff's case the jaw bones, the mandible and maxilla, had shrunk and the surgery that was performed replaced some of that bone.

Dr. Smith testified that the surgery was medically necessary for several reasons. First, the deterioration of plaintiff's lower jaw bone made it more prone to fracture under even a slight amount of trauma. Second, a nerve passes through the middle of the jaw bone. That nerve is not designed to be exposed outside the canal of the bone, and when exposed a patient can experience pain and neuralgia. Dr. Smith testified that the bone augmentation surgery added strength and integrity to the jaw and also addressed the nerve problem. Finally, Dr. Smith ex-plained that a shrinkage of the maxilla, the upper jaw bone, makes it more likely that tissue between the mouth and sinus cavity will perforate. This can lead to sinus infections from the mouth or mouth infections from the sinus. Dr. Smith testified that plaintiff had suffered from both these conditions. Dr. Smith concluded that the bone augmentation surgery was medically reasonable and necessary to avoid jaw fractures, nerve exposure, and sinus and mouth infections. He also testified that the surgery was performed on the mandible and maxilla which are not considered structures directly supporting the teeth.

Dr. Smith also testified that in his experience the dental implant procedures are not covered under Medicare Part B. He stated that the ulcer condition alone would not justify bone augmentation surgery and implants. Dr. Smith stated that the implants do serve to stimulate the underlying bone and thus slow any additional deterioration. In this way, Dr. Smith testified, the implants provide some additional protection against a recurring deterioration of the jaw bones.

## II. ALJ's Decision

In his decision dated December 23, 1992, the ALJ found that the bone augmentation surgeries performed on March 8 and March 23, 1990 did not constitute dental services, were medically reasonable and necessary, and are covered services under Medicare Part B. In reaching this conclusion, the ALJ found that the surgery was performed on the jaw bones which are not structures directly supporting the teeth. He further found that the surgery was not performed primarily in connection with an excluded service, such as preparing the mouth for dentures, but rather it was primarily done due to severe atrophy of the jaw bones which exposed the peroneal nerve and heightened the possibility of jaw fracture.

The ALJ further found that the porcelain veneer crowns, provided on July 3 and October 1, 1990, were dental services and as such are not covered services.

On February 19, 1993, plaintiff filed a request for review of the ALJ's decision with the Appeals Council. The Appeals Council

denied the request for review on July 12, 1994, and therefore the ALJ's decision stands as the final decision of the Secretary. Having exhausted his administrative remedies, plaintiff filed a complaint with this court on September 9, 1994.

### III. Standard of Review

■ The Secretary's determination is binding on this court if supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Dixon v. Heckler,* 811 F.2d 506, 508 (10th Cir.1987). While "more than a mere scintilla," substantial evidence is only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). In determining whether the decision is supported by substantial evidence, the court must review the record as a whole to determine whether the Secretary's conclusions are rational. *Holloway v. Heckler,* 607 F.Supp. 71, 72 (D.Kan.1985).

### IV. Analysis

The only issue before the court is whether the ALJ's finding, that the dental implants provided to plaintiff are not covered services under Medicare Part B, is supported by substantial evidence. The total cost of the dental implant procedures, performed on July 3 and October 1, 1990, was $10,400.00. Because Medicare Part B reimburses 80% of reasonable and necessary charges for covered services, the amount in controversy is $8,320.00.

Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395 *et seq.* ("the Act"), established the program of Health Insurance for the Aged and Disabled, commonly known as Medicare. Beneficiaries under the Medicare program include individuals age 65 and over and disabled individuals who are also entitled to benefits under Title II of the Social Security Act. 42 U.S.C. § 1395c. Part B of Medicare, the program under which plaintiff seeks reimbursement in this case, is an optional supplemental medical insurance program covering aged and disabled individuals who elect to enroll. 42 U.S.C. § 1395j. Medicare Part B is financed from premium payments by the enrollees together with contributions from the Federal Government. *Id.*

Medicare Part B does not generally provide coverage for dental services. The Act specifically excludes from coverage "any expenses incurred for items or services—"

> (12) where such expenses are for services in connection with the care, treatment, filling, removal, or replacement of teeth or structures directly supporting teeth, except that payment may be made under part A of this subchapter in the case of inpatient hospital services in connection with the provision of such dental services if the individual, because of his underlying medical condition and clinical status or because of the severity of the dental procedure, requires hospitalization in connection with the provision of such services. . . .

42 U.S.C. § 1395y(a)(12); *see also* 42 C.F.R. § 411.15(i).

The Medicare Carrier's Manual (MCM) further elaborates on this dental services exclusion. MCM § 2136 states in part:

> As indicated under the general exclusions from coverage, items and services in connection with the care, treatment, filling, removal, or replacement of teeth or structures directly supporting the teeth are not covered. Structures directly supporting the teeth means the periodontium, which includes the gingivae, dentogingival junction, periodontal membrane, cementum of the teeth, and alveolar process.

> However, payment may be made for (a) surgery related to the jaw or any structure contiguous to the jaw, or (b) the reduction of any fracture of the jaw or any facial bone, including dental splints or other appliances used for this purpose. (See also § 2020.3.)

> If an otherwise noncovered procedure or service is performed by a dentist as incident to and as an integral part of a covered procedure or service performed by him, the total service performed by the dentist on such an occasion is covered.

The MCM contains the Secretary's interpretation of the Medicare statute and regulations. "Such an administrative interpretation is ordinarily entitled to considerable def-

erence unless it is plainly inconsistent with the clear meaning of the statute and regulations or unreasonable." *Downtown Med. Ctr. v. Bowen,* 944 F.2d 756 (10th Cir.1991). In this case, the court finds that the Secretary's interpretation of the dental exclusion, as embodied in MCM § 2136, is not unreasonable or inconsistent with the Medicare statute and regulations.

The services related to implanting porcelain veneer crowns into plaintiff's mouth would generally be excluded from coverage under the statute's express language which excludes from coverage services related to "replacement of teeth or structures directly supporting teeth." Plaintiff, however, argues that in this case the dental implant services do not fall within the statute's exclusion.

Plaintiff contends that the implant procedure should be covered by Medicare Part B because MCM § 2136 provides that a procedure is covered when it is "incident to and as an integral part of a covered procedure or service." Plaintiff argues that the dental implants are an integral part of the bone augmentation surgery, which the ALJ determined to be a covered procedure.

■ The medical evidence does not support such a conclusion. Nothing in the medical records would indicate that the dental implant procedure was a necessary part of the bone augmentation surgery, or that the bone augmentation would be beneficial only if plaintiff would later receive dental implants. In a letter to Blue Cross–Blue Shield of Kansas dated August 14, 1989, Dr. Doyle described the bone augmentation surgery and quoted a fee of $9600.00. The letter does not refer to dental implants as being a necessary adjunct to the surgery. Dr. Smith testified that the implants serve to stimulate and revitalize the jaw bones and thus protected "even more" against further deterioration of those bones and a reoccurrence of the conditions which necessitated the bone augmentation surgery. This testimony, however, only establishes that the implants may retard further deterioration of the jaw bones, not that the implant procedure an integral part of the bone augmentation surgery.

■ Plaintiff also argues that the dental implant services are covered under Medicare Part B because they are "medically necessary" in treating plaintiff's ulcers and in stimulating the jaw bones so that they maintain their structural integrity. Medical necessity alone, however, is not the determinant as to whether a particular procedure or service is covered under Medicare Part B. While the Act bars payment of benefits for services "not reasonable and necessary" for diagnosis and treatment, *see* 42 U.S.C. § 1395y(a)(1)(A), it does not necessarily follow that Medicare covers all medically necessary services. *Goodman v. Sullivan,* 891 F.2d 449, 450–51 (2d Cir.1989). Instead, the Act excludes from coverage specific services, including those related to dental care, regardless of whether those services are considered medically necessary.

Finally, plaintiff points to language contained in 42 U.S.C. § 1395y(a)(12), which states that otherwise non-covered dental services may be covered "in the case of inpatient hospital services in connection with the provision of such dental services if the individual, because of his underlying medical condition and clinical status ... requires hospitalization in connection with the provision of such services." Plaintiff contends that the dental implants were required because of his underlying medical condition, his ulcers. Although plaintiff was not hospitalized at the time of the procedure, he contends that hospitalization is not required because MCM § 2136 states as follows:

> Payment can be made for a covered dental procedure no matter where the service is performed. Therefore, the hospitalization or non-hospitalization of a patient has no direct bearing on the coverage or exclusion of a given dental procedure.

The exception to the dental exclusion in § 1395y(a)(12) allows coverage only under Medicare Part A which pays certain expenses related to inpatient hospital services. *See* 42 U.S.C. § 1395d. Plaintiff's claim is made under Medicare Part B only. The paragraph plaintiff cites from MCM § 2136 refers only to dental services which are otherwise covered under Part B. The question of whether the dental implant services would

have been covered under Part A if the services had been performed while plaintiff was hospitalized is not before the court.

In summary, the court concludes that the administrative record contains substantial evidence to support the ALJ's finding that the services performed on July 3 and October 1, 1990, related to dental implants, were excluded from coverage under Medicare Part B.

IT IS, THEREFORE, BY THE COURT ORDERED that plaintiff's motion for summary judgment (Doc. 9) is denied.

IT IS FURTHER ORDERED that defendant's motion for an order affirming the Secretary's decision (Doc. 13) is granted. The decision of the Secretary is affirmed.

Copies of this order shall be mailed to counsel of record for the parties.

**IT IS SO ORDERED.**