In the
United States Court of Appeals
For the Seventh Circuit

No. 00-2711

Floyd Wood,

Plaintiff-Appellant,

v.

Tommy G. Thompson,*/ as Secretary
of the Department of Health
and Human Services,

Defendant-Appellee.

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 99-C-760-S--John C. Shabaz, Chief Judge.

Argued November 16, 2000--Decided April 12,
2001

   Before Cudahy, Coffey, and Evans, Circuit
Judges.

   Cudahy, Circuit Judge.  This case is
almost as hard as pulling the teeth of
Floyd Wood, who lost a final decision of
the United States Department of Health
and Human Services Secretary Tommy
Thompson that the extraction of his
diseased teeth was not reimbursable under
Part B of the Medicare program, 42 U.S.C.
sec. 1395 et seq. We now affirm the
district court's decision to uphold the
Secretary's ruling.

I.

   Wood, an enrollee in the Medicare
program, needed a heart valve
replacement. At the time his physician
determined the need for this procedure,
Wood had severe infection in the tissue
supporting his teeth. His
cardiologistdetermined that Wood's severe
periodontal disease presented a
significant risk of bacterial infection
to his artificial heart valve after
implantation of the device. Because of

his poor dental health--and the possibility of infection--Wood's doctor recommended that he undergo dental extractions prior to his surgery. On June 6, 1994, a dentist removed 14 of Wood's diseased teeth and recontoured his upper and lower jaw (a procedure designed to prepare the tooth sockets for future denture construction). On September 13, Wood was admitted to a St. Paul, Minnesota hospital to undergo the heart valve replacement surgery. The doctor who performed the operation, Lyle Joyce, said he would not have performed the procedure if Wood had not undergone the tooth removal prior to surgery because of the risk of bacterial infection.

After removing Wood's teeth, Wood's dentist submitted a $1,156 claim for dental services to MetraHealth Companies, a Medicare carrier,/1 which denied coverage of the services. Wood appealed this determination to a Medicare Part B hearing officer, who upheld the carrier's decision. Wood then appealed to a social security administrative law judge (ALJ), who affirmed the hearing officer's determination. The ALJ decided that Wood was not qualified for coverage because services in connection with the treatment of teeth were not covered under Part B of the Medicare Act, Title XVIII of the Social Security Act, 79 Stat. 290, as amended, 42 U.S.C. sec. 1395 et seq. Congress, the ALJ concluded, specifically excluded dental care from coverage under Medicare. See Social Security Act sec. 1862(a), 42 U.S.C. sec. 1395y(a). The ALJ did identify three exceptions to this exclusion: dental care in preparation for radiation of the jaw; a covered medical procedure performed by the same physician doing the dental work; and inpatient dental examinations conducted in preparation for kidney transplant surgery. While the ALJ did not dispute that Wood's extractions were medically necessary, he concluded that this procedure did not fall within one of the exceptions to the blanket denial of dental coverage under Medicare. Wood requested review of the ALJ's decision by the Medicare Appeals Council, but the Council declined to review the case, stating that the ALJ's decision would stand as the final decision of the Secretary.

Because the Medicare Appeals Council

adopted the decision of the ALJ, that decision stands as the final decision of the Secretary. Judicial review of such final decisions lies in the appropriate district court under 42 U.S.C. sec. 405(g). Wood thus appealed to the District Court for the Western District of Wisconsin, which affirmed. We review the ALJ's decision with the deference due to final decisions of agencies./2 Under 42 U.S.C. sec. 405(g), "findings of the Secretary . . . if supported by substantial evidence, shall be conclusive, and where a claim has been denied by the Secretary . . . the court shall review only the question of conformity with [the Secretary's] regulations and the validity of such regulations." See also Johnson v. Heckler, 741 F.2d 948, 952 (7th Cir. 1984). "Substantial evidence" is "more than a scintilla" but less than a preponderance of the evidence, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kapusta v. Sullivan, 900 F.2d 94, 96 (7th Cir. 1990) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

We may also set aside the Secretary's denial of coverage if the denial was based on legal error. See Stevenson v. Chater, 105 F.3d 1151, 1153 (7th Cir. 1997). When interpreting a statute, we first determine whether the intent of Congress is unambiguous. See Chevron U.S.A., Inc. v. Natural Resource Defense Council, Inc., 467 U.S. 837, 842 (1984). If the meaning of the statute is clear, no deference is due an agency's interpretation. If the meaning of the statute is ambiguous, an agency's interpretation will be deferred to if it is reasonable. See id. at 844. If the agency's interpretation conflicts with its prior interpretation, the current interpretation is "'entitled to considerably less deference' than a consistently held view." INS v. Cardoza-Fonseca, 480 U.S. 421, 446 n.30 (1987) (quoting Watt v. Alaska, 451 U.S. 259, 273 (1981)).

II.

Title XVIII of the Social Security Act, 42 U.S.C. sec. 1395 et seq., established Medicare as a federally funded and administered health insurance program for

eligible persons who (1) are 65 or older and entitled to social security retirement benefits; (2) are disabled and entitled to social security disability benefits; or (3) have end stage renal (kidney) disease. See 42 U.S.C. sec. 1395c. The Secretary of Health and Human Services administers the Medicare program through the Health Care Financing Administration (HCFA), which enters into agreements with private contractors to administer payments of funds to hospitals and providers for covered services on behalf of eligible beneficiaries. See 42 U.S.C. sec.sec. 1395h, 1395u(a).

The Medicare program is divided into three major components. Part A, the hospital insurance benefits program, provides coverage for inpatient hospital care, post-hospital care in skilled nursing facilities and post-hospital home care services. See 42 U.S.C. sec.sec. 1395c to 1395i-5. Part B generally provides coverage for outpatient physician services, physical and occupational therapy services, outpatient rehabilitation facility services, and medical equipment and services provided at rural health clinics and qualified health centers. See 42 U.S.C. sec.sec. 1395j to 1395w-4, 1395x(s); 42 C.F.R. sec. 410.3. Part B does not provide reimbursement for dental services. Expenses excluded from Part B coverage include those that are incurred:
in connection with the care, treatment, filling, removal, or replacement of teeth or structures directly supporting teeth, except that payment may be made under Part A of this subchapter in the case of inpatient hospital services . . . .

42 U.S.C. sec. 1395y(a)(13). Part C is a new component of the Medicare statute, and the parties agree that it has no bearing on this case. See 42 U.S.C. sec. 1395w-21 et seq. Part B is the only section of the statute under which Wood's procedure could arguably fall, because the extraction did not involve inpatient hospital care. However, as noted, the statute clearly excludes dental procedures from coverage under Part B.

There is only one exception to the exclusion of dental services under Part B. Section 2136 of the Medicare Carriers Manual/3 states that otherwise noncovered services performed by a

dentist "as incident to and as an integral part of a covered procedure or service" will be covered by Medicare. Medicare Carriers Manual sec. 2136. Both the dental and the covered procedure under this provision must be furnished by the same provider. An example of this, provided in the manual, is when the reconstruction of a ridge, which is normally a non-covered procedure, is performed "as a result of and at the same time as the surgical removal of a tumor (for other than dental purposes)." See id. In such a situation, "the totality of surgical procedures would be a covered service." See id. Citing this--the "same physician rule"--the ALJ concluded that the case here neither fits within the rule's purview nor falls within any corollaries to that rule.

There are two corollaries to the "same physician rule," under which dental procedures will be covered under Part B even if the covered procedure is performed by someone other than a dentist. The first is outlined in sec. 2136 of the Medicare Carriers Manual: the extraction of teeth to prepare the jaw for radiation treatment of abnormal jaw growths (neoplastic disease). The second corollary allows for Medicare coverage of an inpatient dental examination performed "as part of a comprehensive workup prior to renal [kidney] transplant surgery." Medicare Coverage Issues Manual sec. 50-26./4 The ALJ concluded that Wood's procedure fit within neither of these corollaries, and that therefore Wood could not escape the exclusion for dental services.

III.

On appeal, Wood advances a three-step argument: (1) the dental services exclusion in the statute is ambiguous; (2) the HCFA's interpretation of the statute is unreasonable; and (3) the legislative history is inconsistent with the over-broad interpretation of the exclusion and HCFA's interpretation of the other medically necessary exceptions to it.

In reviewing an agency's interpretation of a statute, we first determine whether that statute is ambiguous. See Chevron, 467 U.S. at 842; United Transp. Union-Ill. Legislative Bd. v. Surface Transp.

Bd., 183 F.3d 606, 613 (7th Cir. 1999). The Secretary appears to concede that the statute is ambiguous on this point: he begins by arguing for the reasonableness of his articulated exceptions and the exclusion of Wood's procedure. As described above, the statute delineates the type of dental services that can be covered under Part A, and does not indicate any exceptions to the exclusion from coverage under Part B./5 Because there are exceptions, Wood reasons, the statute must be ambiguous and the Secretary does not appear to view the exclusion as absolute. This is not an entirely outlandish argument. That a statute has several articulated exceptions does not necessarily mean it is ambiguous, but it does suggest the need for a possible concession on the part of the administrator of the statute as to ambiguity. The Secretary argues that the HCFA has interpreted the Medicare Act and its legislative history to allow for coverage of dental procedures in a few limited circumstances--and has not felt free to make further exceptions to the exclusion, even if it believes the added exceptions would not undermine Congress' goals. The Secretary fails to explain why the existing exceptions, and not others, serve any express intent of Congress to exclude procedures such as Wood's. We thus consider the statutory exclusion of dental coverage to be ambiguous, and consider whether the Secretary's interpretation of the statute in the present case is reasonable.

IV.

Wood argues that the HCFA's interpretation of the statute is unreasonable, and attempts to show that the Secretary's proposed list of exceptions to the Part B exclusion is not exhaustive. This argument is two-pronged: first, he argues that the HCFA's current interpretation of the statute is inconsistent with prior interpretations, and second, that the rationale behind the other exceptions applies here. Wood claims the exclusion of procedures like his is inconsistent with prior interpretations because those interpretations are premised on the idea that life-saving procedures are or should be covered by Medicare. Because dental services received prior to a kidney

transplant are covered under an administrative interpretation of the Act, see National Coverage Decision sec. 50-26, Medicare Coverage Issues Manual, Wood believes that coverage for dental services prior to a heart valve replacement is a "logical extension." He reasons that the rationale of the kidney transplant exception would apply in his case as well:

[T]he [dental] examination is for the identification, prior to a complex surgical procedure, of existing medical problems where the increased possibility of infection would not only reduce the chances for successful surgery but would also expose the patient to additional risks in undergoing such surgery.

National Coverage Decision sec. 50-26, Medicare Coverage Issues Manual. But, as the Secretary notes, the kidney transplant exception applies to inpatient dental examinations, a significantly worded application, considering that inpatient hospital services in connection with dental care are explicitly covered by the statute under Medicare Part A. Further, the Medicare Act itself singles out end-stage kidney disease for special treatment: it is the only disease that explicitly entitles an individual to Medicare coverage. See 42 U.S.C. sec. 1395c./6 While this alone may not be sufficient to justify the narrowness of the sec. 50-26 exception, it does provide some indication that an extension of it to include heart valve surgery is not what Congress intended. All medically necessary procedures are not covered under the Act. It is simply too long a stretch to extend this exception for an inpatient examination in connection with renal transplant surgery to outpatient treatment prior to heart valve surgery on a rationale of the comparable complexity and seriousness of the respective surgeries. In addition, the renal disease exception specifically applies to an "examination," not to treatment.

The Secretary notes that while the HCFA has outlined limited exceptions to the general exclusion, each exception is consistent with the language of the Medicare Act and congressional intent. The only statutorily explicit coverage of services related to dental procedures does not actually cover the dental

services at all; it merely reimbursesproviders of inpatient hospital services in connection with dental procedures. Also, the corollary to the "same physician rule" in Medicare Carriers Manual sec. 2136 is for the extraction of teeth to prepare the jaw for radiation treatment of oral tumors. The Secretary argues that the ALJ reasonably limited this exception to its facts. We agree. A possibly questionable exception promulgated by the HCFA is no argument that the exception should be expandedfurther.

Section 2136 contains a reference to another section that Wood argues indicates an intent to extend coverage to his kind of procedure. That section, sec. 2020.3 of the Medicare Carriers Manual, indicates that Medicare Part B pays for "otherwise covered" services furnished by a doctor of dental surgery or dental medicine if those services would be covered as physicians' services when performed by a doctor of medicine. The section indicates further that "otherwise covered services" include "treatment of oral infections and interpretations of diagnostic X-ray examinations in connection with covered services." But the section goes on to note that "the general exclusion of payment for dental services has not been withdrawn." The Secretary argues that interpreting this provision in the way Wood suggests would open the door to coverage of any extraction performed by a dentist to treat an infected tooth. He suggests, as an alternative, that this section should be interpreted to refer to "treatment of oral infections using antibiotics," as suggested in an Institute of Medicine report. Institute of Medicine, Extending Medicare Coverage to Preventive and Other Services 63 (2000). This counter-argument of the Secretary is only modestly convincing. But, in the absence of more specific support for Wood's claim, we cannot extend coverage to dental procedures simply because they are necessary for heart valve replacement surgery.

Wood also attempts to find support in the HCFA's Rural Health Clinic and Federally Qualified Health Centers Manual. That manual defines coverage for services offered at such facilities, which provide services that can be

covered under Medicare Part B. See 42 U.S.C. sec. 1395k(a)(2)(D). The manual, as Wood notes, has a provision nearly identical to sec. 2136 of the Medicare Carriers Manual, with a significant exception:

A dental examination for patients requiring certain complex surgical procedures may be covered. To date, the only identified procedures for which dental examinations are covered are kidney transplants and heart valve replacements.

Rural Health Clinic and Federally Qualified Health Centers manual sec. 442 (emphasis added). First, this provision is not applicable to Wood, as he was not treated at either a rural health clinic or a federally qualified health center. Second, this reference to heart valve replacements indicates their specific inclusion within the general exception to the exclusion for examinations in connection with surgical procedures. While this reference lends some weight to Wood's argument, it appears in an isolated corner of the administrative provisions and is not strong enough to prevail over the authority to the contrary. And, again, the Manual specifically covers an "examination," not "treatment."

Wood also notes that, had the services been provided after December 1, 1996 and in Wisconsin, he would have been covered under the Wisconsin Physicians Service's Local Medical Review Policy. He did not rely on this policy in his arguments before the ALJ or the Medicare Appeals Council, and he has therefore waived this argument. See Johnson v. Apfel, 189 F.3d 561, 562 (7th Cir. 1999). Even if the argument had not been waived, this policy would be of no use to Wood. It does indeed state that Medicare covers dental extractions due to infections prior to heart valve replacement surgeries. See Wisconsin Physicians Serv. Local Med. Review Policy, DENT-002./7 Unfortunately, even on the assumption that this plan was approved by the HCFA, the WPS policy is not controlling authority. The policy was adopted more than two years after the dental services in this case were provided--and they were performed in Minnesota, not Wisconsin. In addition, as the Secretary notes, local medical review policies may not conflict

with national policy, and allowing Part B coverage of dental extractions in connection with procedures other than radiation treatment conflicts with the Medicare Act. Wood argues that the local policy means that the HCFA approves of coverage of procedures like his, but he has presented no evidence that the HCFA has approved the policy. Indeed, a report by the Institute of Medicine-- commissioned by Congress to report on certain aspects of Medicare coverage-- cites the WPS policy as an example of a local policy that conflicts with national coverage policy. Institute of Medicine, Extending Medicare Coverage to Preventive and Other Services 64-65 (2000).

Wood next contends that the rationale behind the exceptions to the dental exclusion for certain medically necessary services should extend to the services performed in this case. Because all the exceptions appear to be aimed at dental services that are medically necessary under the circumstances, Wood reasons, there is an implied intent to extend coverage to all medically necessary dental services. The common thread among the narrow exceptions, Wood argues, is the purpose to avoid creating "an impediment to accessing covered services." All the exceptions, he notes, involve "dental services [that] are medically necessary components of the treatment of underlying medical conditions." But the "common thread" seems actually to be that the exceptions involve dental services that are requisite to performing a procedure involving the mouth or jaw. The only exception to this logic is the coverage of an inpatient dental examination prior to kidney transplant surgery./8 But, the Secretary argues, this latter exception is only the Secretary's reasonable interpretation of the Part A coverage for inpatient hospital services in connection with certain dental procedures. Medicare Part A will cover inpatient hospital services in connection with dental services if the claimant has an underlying medical condition that requires hospitalization, or if the severity of the dental service itself requires hospitalization. See 42 U.S.C. sec. 1395y(a)(12). The Secretary also notes that the "underlying medical condition" exception is applicable only to claims for inpatient services--not

claims such as this one, brought under Part B for outpatient dental work. See id. We agree.

Finally, Wood argues that a decision of a social security ALJ supports his view./9 In that case, the claimant needed to have a defibrillator implanted, and was required to have his diseased teeth removed prior to the surgery. The ALJ held that the extractions were covered because "the claimant's dental work would fall under an exception to the dental services exclusion in the regulations because the dental work was required secondary to a severe heart condition." App. at 49-54. Because of the scanty record, the details of the case are a mystery, but it appears that the claimant had received inpatient dental surgery, which would distinguish the circumstances from those before us and would justify a recovery under Part A. If the ALJ awarded benefits under Part B, he did so erroneously. Even if we knew enough about the case to receive guidance from it, the decision would not authorize an exception adverse to HCFA policy. See Friedrich v. Secretary of Health & Human Serv., 894 F.2d 829, 835 (6th Cir. 1990) (single decision of the Medicare Appeals Council was "not significant" enough to support the plaintiff's argument that the Secretary had not followed a consistent policy for denying coverage); Homemakers N. Shore, Inc. v. Bowen, 832 F.2d 408, 413 (7th Cir. 1987) ("'The Secretary's position' is the position of the Department as an entity, and the fact that people in the chain of command have expressed divergent views does not diminish the effect of the agency's resolution of those disputes.") (citations omitted).

The bottom line is that the statute is clear, with clear exceptions, and an argument based only on the rationale supporting the exceptions, absent some constitutional argument, cannot prevail. As the Secretary repeatedly notes, not all medically necessary services are covered by Medicare, and the Medicare Act specifically excludes dental coverage, with a few narrowly defined exceptions. Whether the case before us looks like one of those exceptions or not (and the Secretary argues persuasively that it does not), we are not armed with power to fashion a new exception:

We have held that "the enumeration of specific exclusions from the operation of a statute is an indication that the statute should apply to all cases not specifically excluded." . . . Hence we are bound by the particular rules enacted by Congress and are not free to carve out our own exceptions merely because we believe they would not undermine Congress' goals.

Central States Southeast & Southwest Areas Pension Fund v. Bellmont Trucking Co., 788 F.2d 428, 433 (7th Cir. 1986) (quoting In re Cash Currency Exchange, 762 F.2d 542, 552 (7th Cir. 1985), cert. denied, 474 U.S. 904 (1985)). When Congress has chosen specific rules aimed at a particular goal, "[a]ny rule of this character will overshoot in some respects and fall short in others . . . . Yet a court may not convert a rule into a general standard without reversing the choice Congress made." United States v. Medico Indus., Inc., 784 F.2d 840, 844 (7th Cir. 1986). The Secretary's interpretation is reasonable, and Wood has failed to demonstrate that the denial of coverage for his procedure was based on an erroneous reading of the statute or a misapplication of HCFA regulations.

Wood's next effort is an argument that the legislative history of the statute supports his proposed interpretation. To the contrary, the history supports the Secretary's view. Wood relies heavily on a Senate report in which the Senate Finance Committee discusses the exclusion of coverage for routine dental services. S. Rep. No. 89-404 (1965). But the strongest support for Wood's argument can arguably support the Secretary's interpretation as well: "The committee bill provides a specific exclusion of routine dental care to make clear that the services of dental surgeons covered under the bill are restricted to complex surgical procedures." Id. While Wood's procedure probably does not qualify as "routine dental care," it does not qualify as a "complex surgical procedure" either. Later in the report, the committee notes that "routine dental treatment--filling, removal or replacement of teeth or treatment of structures directly supporting teeth-- would not be covered." Id. This evidence of congressional intent arguably supports

the Secretary's view, and certainly is not authority for us to fashion an additional exception out of thin air.

V.

Wood finally argues that the Secretary's decision was not based on substantial evidence. We may indeed set aside the Secretary's decision on a matter of Medicare payment if it is not based on substantial evidence. See Stevenson v. Chater, 105 F.3d 1151, 1153 (7th Cir. 1997). Wood's argument centers on the "overwhelming evidence" that the dental services he received were a medically necessary precursor to a heart valve replacement surgery. That these services were medically necessary does not appear to be disputed. The dispute in this case is whether the Secretary properly denied coverage for these services, despite the fact that they were medically necessary. Thus, this argument is misplaced.

VI.

Wood should lobby Congress or the Secretary; the judicial branch can be of no use to him. For the foregoing reasons, we AFFIRM.

/* Pursuant to Fed. R. App. P. 43(c), Tommy Thompson is substituted as a party respondent for Donna E. Shalala.

/1 Under Part B of the statute, "carriers" are private contractors that administer payments of funds to providers on behalf of eligible Medicare beneficiaries for services rendered. See 42 U.S.C. sec.sec. 1395h, 1395u(a).

/2 Wood argues that, under our decision in Groves v. Apfel, the ALJ findings must be reviewed de novo. See 148 F.3d 809, 811 (7th Cir. 1998). He misunderstands that case; we held in Groves that our review of a district court's decision reversing an ALJ decision--not our review of the ALJ decision itself--is de novo. See id.

/3 The Secretary has the authority to issue interpretive rules and regulations under the statute. See 42 U.S.C. sec. 1395ff(a). This takes the form of regulations, see 42 C.F.R. pt. 411 et seq., and manuals. The manual that provides guidance as to Part B coverage is the Medicare Carriers Manual.

/4 The second exception is found in the Medicare

Coverage Issues Manual, under which the HCFA
issues national coverage decisions and policy
statements on Medicare coverage for specificmedi-
cal services, procedures or devices. See 42
U.S.C. sec. 1395hh. National coverage decisions
define coverage of specific procedures and are
not general coverage policies.

/5 Medicare Part A will cover inpatient hospital
services in connection with dental services if
the individual has an underlying medical condi-
tion that requires hospitalization, or if the
severity of the dental service itself requires
hospitalization. See 42 U.S.C. sec. 1395y(a)(12).

/6 Section 1395c provides that the Medicare program
provides coverage to (1) individuals who are age
65 or over and are eligible for social security
retirement benefits; (2) individuals who are
disabled and entitled to social security disabil-
ity benefits; and "(3) certain individuals who
did not meet the conditions specified in either
clause (1) or (2) but who are medically deter-
mined to have end stage renal disease." (Emphasis
added.)

/7 A copy of this policy can be found in the Appell-
ant's appendix to his brief, at pages 38-43.

/8 While the exception notes that such a procedure
would be covered under Part A if performed by a
dentist on hospital staff, or Part B if performed
by a physician, it is always applicable only to
inpatient examinations.

/9 We cannot locate this decision. Both parties cite
to the appellant's appendix as the only source
for this decision. App. at 49-54. The party
names, docket number and other pertinent informa-
tion have been redacted from this document.
Because we conclude that the decision is not
dispositive and we give it slight weight in our
decision today, we will overlook this obvious
problem.