**Ronald FOURNIER, et al., Plaintiffs,**

v.

**Kathleen SEBELIUS, Secretary of the Department of Health and Human Services, Defendant.**

**No. CV 08–2309–PHX–ROS.**

United States District Court,
D. Arizona.

Feb. 14, 2012.

---

**205.** Dkt. 32 at 14.

**208.** Dkt. 32 at 27–29.

Gill Deford, Wey–Wey E. Kwok, Ctr. for Medicare Advocacy Inc., Willimantic, CT, for Plaintiffs.

Michael A. Johns, U.S. Attorney's Office, Phoenix, AZ, for Defendant.

## ORDER

ROSLYN O. SILVER, Chief Judge.

Plaintiffs appeal the final decisions of the Secretary of Health and Human Services ("Defendant" or "Secretary") denying Plaintiffs' claims for Medicare coverage for dental services. For the reasons below, the Court affirms the Secretary's decisions regarding Berg and DiCecco, and dismisses Fournier's claim as moot.[1]

## BACKGROUND

Plaintiffs Ronald Fournier ("Fournier"), Delores Berg ("Berg"), and Thomas DiCecco ("DiCecco") ("Plaintiffs") lost salivary functioning due to medical conditions and treatment. The loss of salivary function damaged Plaintiffs' teeth. Plaintiffs sought Medicare coverage for dental services to repair or extract damaged teeth. Plaintiffs' respective claims for coverage were denied, and Plaintiffs sought administrative review. The denials were upheld, and Plaintiffs appealed the Secretary's decisions.

After this lawsuit was filed, on November 1, 2009, the ALJ issued a favorable decision in Fournier's claim, which became the final decision of the Secretary. (Doc. 77 at 2–3). The ALJ found Fournier's requested treatment was for a serious infection, and therefore covered because it was medically "reasonable and necessary for the ... treatment of an illness or injury or to improve the functioning of a malformed body member" pursuant to 42 U.S.C. § 1395y(a)(1)(A). (Doc. 85, Ex. A

at 10).[2]  As discussed below, in light of the decision to approve coverage, Fournier's claim is moot.

Berg was diagnosed with Sjogren's syndrome in 2003 while she was enrolled in a Medicare Advantage ("MA") plan under Medicare Part C. Because of the syndrome, she lost saliva production and her teeth decayed and began to break off. (Doc. 54 at 7).  Berg presented to Dr. Steven S. Swidler, D.D.S., who prepared a treatment plan that included partial dentures and crowns.  (*Id.*).  Berg sought coverage for abutments and a partial denture and testified she needed bridges. (AR 458, 466, 784).  On March 3, 2008, Plaintiff Berg's MA plan denied coverage and upheld its denial on review.  (AR 471).  On November 18, 2008, the ALJ denied her appeal, stating although Berg's dental problems were caused by her disease, the dental work was the primary procedure and did not fall under any exclusion.  (AR 478).  On March 27, 2009, the MAC denied Berg's appeal from the ALJ's decision.  (Doc. 77 at 3, AR 437).  The MAC cited the general exclusion of dental services under Medicare, and noted coverage is provided "only under limited circumstances not applicable to this case."  (*Id.*) (citing Medicare Benefit Policy Manual ("MBPM") (CMS Pub. 100–2), Chap. 15, § 150 (dental services) and Chap. 16, § 140 (dental service exclusion)).  "[I]n particular," the MAC noted, "when an excluded dental service is the primary procedure involved, coverage is excluded regardless of the complexity of the procedure."  (*Id.*) (citing MBPM, Chap. 16, § 140).

---

1. The Court has reviewed the briefing and concluded it would not be aided by oral argument.  The parties have had full opportunity to brief the issues.

2. Plaintiffs filed their initial Complaint before the final, favorable ALJ decision.  Only the

second favorable decision is under review (*See* Doc. 28 at 3).  Humana did not seek review by the Medical Appeals Council ("MAC"), making the ALJ decision the Secretary's final decision in the case.

DiCecco received an allogeneic bone marrow transplant and a donor lymphocyte infusion as part of his chronic myelogenous leukemia treatment in the 1990s. (Doc. 77 at 3–4; AR 858). As a result of the treatment, DiCecco developed chronic graft versus host disease ("GVHD"). The GVHD affected his saliva production and caused his teeth to decay and break off at the roots a decade later. DiCecco was denied coverage for the dental services his doctor prescribed. The MAC affirmed the denial of coverage. The MAC acknowledged DiCecco's need for dental services that were caused by his medical condition, but stated:

> Nonetheless, the fact that there was a relationship between a medical condition and the dental services does not, by itself, qualify the dental services for Medicare coverage.... In order to be covered by [the] exception, the dental services would have to be furnished along with another covered procedure *performed by the dentist on the same occasion* (AR at 795) (emphasis in original).

## ANALYSIS

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g) and 1395ff(b), the Court will uphold the findings of the Secretary if supported by substantial evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir.2001). The Court may set aside the Secretary's denial of coverage if the denial was based on legal error. *Stevenson v. Chater,* 105 F.3d 1151, 1153 (7th Cir.1997).

### B. Fournier

Fournier's second appeal was favorable. He has obtained the coverage he sought to obtain in this appeal. Therefore, his claim for coverage is moot. *See Heckler v. Ringer,* 466 U.S. 602, 621–22, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984) (holding the court cannot issue advisory opinions regarding future benefits under the Medicare Act).

### C. Berg and DiCecco

The Medicare program, established under Title XVIII of the Social Security Act ("the Act"), 42 U.S.C. §§ 1395 to 1395iii, pays for covered medical care provided to eligible aged and disabled persons. Medicare has two main parts, Part A and Part B. Part A authorizes payment primarily for institutional care, including inpatient hospital care. 42 U.S.C. § 1395d(a). Part B is optional and authorizes payment for outpatient hospital care. 42 U.S.C. § 1395k. Under Medicare Part C, individuals qualified for Medicare enroll in a health plan (MA plan) with a private insurance company. 42 U.S.C. §§ 1395w–21—1395w–29. The MA Plan must enter into a contract with the Secretary of Health and Human Services, 42 U.S.C. § 1395w–27, and agree to provide the same benefits an individual is eligible to receive under Medicare, 42 U.S.C. § 1395w–22(a)(1)(A). Berg was enrolled in an MA plan, while DiCecco received services under Medicare Parts A and B. (Doc. 81 at 3).

To be "covered" under the Act, the medical care must be both "reasonable and necessary" for treatment of illness or injury or to improve the functioning of a malformed body member, and not excluded by any other provision of the Act. 42 U.S.C. § 1395y(a)(1)(A).

Medicare generally does not provide coverage for dental services. The statute at issue, 42 U.S.C. § 1395y(a)(12), excludes from coverage under Parts A and B:

> such expenses ... for services in connection with the care, treatment, filling, removal, or replacement of teeth or structures directly supporting teeth, except that payment may be made under part A ... in the case of inpatient hospi-

tal services in connection with the provision of such dental services if the individual, because of his underlying medical condition and clinical status or because of the severity of the dental procedure, requires hospitalization in connection with the provision of such services.

The Secretary has taken the position,[3] "when a patient is hospitalized in connection with the performance of noncovered dental procedures, but the hospitalization was required in order to assure proper medical management, control, or treatment of a nondental impairment ... the *inpatient hospital services would be covered* under the hospital insurance program even though the *dentist's services are not covered.*" (Doc. 81–1, at 5, AR 2982) (emphasis added). But when a patient is hospitalized solely for a noncovered dental procedure, neither the dental services nor the inpatient hospital services are covered. (Doc. 81–1 at 4, AR 2981).

"[W]hen an excluded service is the primary procedure involved it would not be covered regardless of the complexity or difficulty of the procedure." (Doc. 81–1, at 4, AR 2981). Thus, the complexity of a noncovered dental procedure does not convert it into a covered procedure. When a covered service is performed by a dentist, payment will be made regardless of whether it is inpatient or outpatient, and services and supplies incident to a covered dental service are covered. (*Id.*). Therefore, coverage of X-rays, anesthesia and other related procedures by the dentist and her staff depends on whether the underlying dental procedure is covered. (*Id.*).

The text of the statute excludes coverage for dental services in connection with the "care, treatment, filling, removal, or replacement of teeth or structures directly supporting teeth." 42 U.S.C. § 1395y(a)(12). Plaintiffs' dental services fall under this exclusion. Unless they show an applicable exception to this exclusion, Plaintiffs' claims are not covered. The Secretary properly denied Berg and DiCecco's claims because each sought excluded dental treatment and failed to demonstrate an exception applied.

■ The MAC's decision regarding Berg was free from legal error and supported by substantial evidence because Berg sought coverage for abutments and a bridge. (AR at 450, 472–74). This dental treatment was in connection with the care and replacement of teeth, treatment not covered by Medicare under 42 U.S.C. § 1395y(a)(12). The MAC properly held coverage was excluded, regardless of the complexity, because the dental service was the primary procedure involved. Medicare "excludes from coverage specific services, including those related to dental care, regardless of whether those services are considered medically necessary." *Chipman v. Shalala*, 894 F.Supp. 392, 396 (D.Kan.1995) (coverage for crown implants denied); *Goodman v. Sullivan*, 891 F.2d 449, 450 (2d Cir.1989) ("we find the Medicare statute does not require coverage for all medically necessary procedures"). Because Berg's dental services fall under the exclusion "for services in connection with the care, treatment, filling, removal, or replacement of teeth or structures directly supporting teeth," coverage was properly denied.

■ The MAC's decision regarding DiCecco was free from legal error and supported by substantial evidence because DiCecco sought and received treatment of crowns and resins more than a decade

---

**3.** On January 30, 1967, the predecessor agency to the Department of Health and Human Services issued a letter regarding "Coverage of dentists' services under medicare," relevant portions of which were later manualized. (Doc. 81–1, AR 2979). The letter sets forth the Secretary's interpretation of the broad dental exclusion under Medicare.

after he received treatment for chronic myelogenous leukemia. (AR 800, 813, 857–58). As DiCecco sought treatment under Part B, the MAC correctly held a relationship between a medical condition and dental services does not, by itself, qualify the dental services for Medicare coverage. In order to be covered by the exception for services that are "incident to and integral part of" covered dental procedures, the dental services would have to be covered and performed by the dentist on the same occasion. (AR 796); (Doc. 81, Ex. 1 at 2); *see Bick v. Sec'y Health & Human Servs.*, No. CV 95–0313–ABC (RMC), 1996 WL 393656 at *3 (C.D.Cal. 1996) ("the 'underlying medical condition' exception is applicable only to claims for inpatient services-not claims such as this one, brought under Part B for outpatient dental work"); *cf. Maggio v. Shalala*, 40 F.Supp.2d 137, 142 (W.D.N.Y.1999) (holding dental work performed by cancer dental surgeon at the same time plaintiff received treatment for underlying leukemia covered under Part B). Here, the dental services were not covered, and were not performed by the dentist on the same occasion. Therefore, the MAC properly denied coverage.

▌ Plaintiffs contend Congress's intent was to exclude "routine" dental care, and Plaintiffs' dental services were not routine and therefore covered. (Doc. 77 at 14–15). Defendant cites to the 1965 Senate Report that indicated this "specific exclusion" of "routine dental care" was "to make clear that the services of dental surgeons covered under the bill are restricted to complex surgical procedures." (Doc. 81 at 3) (citing S. Rep. 89–404 at 49 (1965), 1965 U.S.C.C.A.N. 1943, 1990). In 1966, the Secretary issued a final rule providing that no payment shall be made for "[r]outine dental services in connection with the care, treatment, filling, removal or replacement of teeth, or structures directly supporting

the teeth." (Doc. 81 at 4) (citing 31 Fed. Reg. 13534, 13535 (Oct. 20, 1966)).

The Secretary's interpretation of these broad exclusions of dental services does not conflict with the statute or the statutory intent. As stated in *Wood*, "[l]ater in the report, the committee notes that 'routine dental treatment—filling, removal or replacement of teeth or treatment of structures directly supporting teeth—would not be covered.' This evidence of congressional intent arguably supports the Secretary's view, and certainly is not authority for us to fashion an additional exception out of thin air." *Wood*, 246 F.3d at 1035 (citing S. Rep. 89–404).

▌ When interpreting a statute, it must first be determined whether the intent of Congress is unambiguous. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). If the meaning of the statute is clear, no deference is due to an agency's interpretation. If the meaning of the statute is ambiguous, an agency's interpretation will be afforded deference if it is reasonable. *Id.* at 844, 104 S.Ct. 2778. If the agency's interpretation conflicts with its prior interpretation, the current interpretation is " 'entitled to considerably less deference' than a consistently held view." *INS v. Cardoza–Fonseca*, 480 U.S. 421, 446 n. 30, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987) (quoting *Watt v. Alaska*, 451 U.S. 259, 273, 101 S.Ct. 1673, 68 L.Ed.2d 80 (1981)).

Even if the statute is ambiguous, the Secretary's regulations are reasonable as applied to deny Berg and DiCecco's claims. Berg sought coverage for abutments and a partial denture and testified she needed bridges. (AR 458, 466, 784). DiCecco sought treatment for frequent exams, fillings, crowns and resins. (AR 800, 813, 857). These dental services fall under the general exclusion in 42 U.S.C.

§ 1395y(a)(12). The MAC's decisions classifying Berg's and DiCecco's respective dental work as "care, treatment, filling, removal or replacement" of teeth was reasonable. (AR at 796). Medicare generally excludes dental procedures, but "allow[s] for coverage of dental procedures in a few limited circumstances." *Wood,* 246 F.3d at 1031. Berg and DiCecco do not point to a specific exception that would provide coverage. The Secretary's interpretation for the statute is reasonable as applied to the facts for this case. *Chipman v. Shalala,* 894 F.Supp. at 396 ("In this case, the court finds that the Secretary's interpretation of the dental exclusion, as embodied in [the Medicare Carrier's Manual ("MCM")] § 2136, is not unreasonable or inconsistent with the Medicare statute and regulations."). Therefore, the Secretary's decision will be affirmed.

**D. Equal Protection**

■■■ Plaintiffs argue the Secretary's policy does not draw rational distinctions between covered and noncovered dental services, and thus violates the equal protection guarantee in the Fifth Amendment's due process clause. (Doc. 77 at 15). Defendant argues it is Congress, not the Secretary, who decided to exclude dental services. 42 U.S.C. § 1395y(a)(12). "[O]ur review is deferential. Governmental decisions to spend money to improve the general public welfare in one way and not another are not confided to the courts. The discretion belongs to Congress unless the choice is clearly wrong, a display of arbitrary power, not an exercise of judgment." *Bowen v. Gilliard,* 483 U.S. 587, 598, 107 S.Ct. 3008, 97 L.Ed.2d 485 (1987) (quotation omitted). A statute or regulation will be struck down only if it "manifests a patently arbitrary classification, utterly lacking in rational justification." *Weinberger v. Salfi,* 422 U.S. 749, 768, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975) (citation omitted); *see also Clinton Memorial*

*Hosp. v. Sullivan,* 783 F.Supp. 1429, 1440 (D.D.C.1992), *aff'd* 10 F.3d 854, 860–61 (D.C.Cir.1993) (applying rational basis standard to Medicare regulations). (Doc. 81 at 17–18).

Congress chose to exclude from coverage dental services pertaining to the care, treatment, filling, and removal of teeth. 42 U.S.C. § 1395y(a)(12). An exception was created under Part B: "if an otherwise noncovered service is performed by a dentist as an incident to and as an integral part of a *covered* procedure or service *performed by him,* the total service performed by the dentist on such [an] occasion would be covered." (Doc. 81, Ex. 1 at 2) (emphasis added); MCM § 2136; MBPM Chap 15 § 150 at 132. Plaintiffs challenge this exception. The exception allows coverage for dental services provided by a dentist as part of the same procedure of a covered treatment. The Secretary's interpretation is consistent with Congress' intent to limit dental coverage under Medicare. Congress' decision to provide for limited dental coverage is not patently arbitrary. Congress has provided other mechanisms to obtain dental coverage, such as optional Medicare insurance.

■■■ "In the area of economics and social welfare, a State does not violate the Equal Protection Clause [and correspondingly the Federal Government does not violate the equal protection component of the Fifth Amendment] merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequity.'" *Schweiker v. Wilson,* 450 U.S. 221, 234, 101 S.Ct. 1074, 67 L.Ed.2d 186 (1981) (quoting *Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 78, 31 S.Ct. 337, 55 L.Ed. 369 (1911)). Although this rational

basis standard is "not a toothless one," it does not allow the courts to substitute their personal notions of good public policy for those of Congress. *Mathews v. Lucas,* 427 U.S. 495, 510, 96 S.Ct. 2755, 49 L.Ed.2d 651 (1976). Here, Congress has created a classificatory scheme that rationally advances a reasonable and identifiable governmental objective. The Court will not substitute its own policy. *See Schweiker,* 450 U.S. at 234–35, 101 S.Ct. 1074.

**E. Class**

■ Plaintiffs attempt to bring this suit on behalf of a nationwide class of persons "who are or will be entitled to Medicare benefits, but are denied Medicare coverage of extraordinary, medically related dental services." (Doc. 56 at 3).[4] Because the claims arise under Medicare, Plaintiffs must proceed under 42 U.S.C. § 405(g). That is, they must satisfy the presentment and exhaustion requirements under that subsection prior to seeking judicial relief. *See Heckler v. Ringer,* 466 U.S. 602, 605–06, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984). Of these two requirements, the second is waivable but the first is not. *Kaiser v. Blue Cross of Cal.,* 347 F.3d 1107, 1115 (9th Cir.2003) (citing *Mathews v. Eldridge,* 424 U.S. 319, 328, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)).

■ Setting aside the presentment question, it is apparent Plaintiffs do not meet the conditions for waiver of exhaustion. Exhaustion may be waived, but only upon satisfying a three-prong test requiring the Complaint be "(1) collateral to a substantive claim of entitlement (collaterality), (2) colorable in its showing that denial of relief will cause irreparable harm (irreparability), and (3) one whose resolution would not serve the purposes of exhaustion (futility)." *Kaiser,* 347 F.3d at 1115 (citing *Johnson v. Shalala,* 2 F.3d 918, 921 (9th Cir.1993)). "Plaintiff must satisfy all three elements in order for waiver to attach." *Davis v. Astrue,* 513 F.Supp.2d 1137, 1145 (N.D.Cal.2007); *see also Kaiser,* 347 F.3d at 1115–16 (denying waiver for failure to satisfy two of the three prongs).

Plaintiffs have not shown collaterality. On April 24, 2009, the Court issued an order finding Fournier failed to show collaterality. (Doc. 33 at 3–4). The Court stated, "Collaterality requires the prior Complaint be 'wholly "collateral" to [any] claim for benefits under the Act.'" (Doc. 33 at 3) (citing *Heckler v. Ringer,* 466 U.S. 602, 618, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984)); *see also Bass v. Soc. Sec. Admin.,* 872 F.2d 832, 833 (9th Cir.1989) (per curiam). A complaint is "not collateral" if it "directly concerns [the] substantive claim" for benefits. *Bass,* 872 F.2d at 833; *see also Indep. Living Center of S. Cal., Inc. v. Leavitt,* No. 2:06–cv–0435–MCE–KJM, 2006 WL 4498214 at *5 (E.D.Cal. June 29, 2006) (a complaint is not "wholly collateral" if it is "inextricably intertwined with claimed ... benefits"). The Court also distinguished *Johnson v. Shalala,* on which Plaintiffs rely. Moreover, Plaintiffs do not have a substantive claim of entitlement. (*Id.*). The Court finds there is no collaterality.

In addition, Plaintiffs' argument that there would be irreparable harm is speculative. Past injury does not meet the irreparability requirement and the class must show a denial of relief will cause a future harm. *Kaiser,* 347 F.3d at 1115. Even if Plaintiffs' claims raised are broader than those suitable for resolution by the Secretary, deciding Plaintiffs' claims would mean also passing judgment on questions which are appropriately first answered by the Secretary. These claims must first be raised in the administrative process which

---

4. Plaintiffs have not filed a motion to certify class.

Congress has provided for the determination of claims for benefits. *Id.* at 1116; *see also Heckler,* 466 U.S. at 614, 104 S.Ct. 2013. Future claimants could apply for dental coverage and they could receive favorable decisions if they meet the statute's exclusion requirements. Based on these pleadings, Plaintiffs will not be permitted to bring this case on behalf of a nationwide class.

Accordingly,

**IT IS ORDERED** the Secretary's decision regarding Berg and DiCecco is **AFFIRMED.**

**IT IS ORDERED** Fournier's appeal of the Secretary's decision is dismissed as moot.

**IT IS ORDERED** the Clerk of the Court shall enter judgment in favor of Defendant.