**Jean MUTH, Plaintiff,**

v.

**Kathleen SEBELIUS as Acting Secretary of Health and Human Services; and Does 1 through 10, Defendants.**

**Case No. SACV 10–01567–CJC(JEMx).**

United States District Court,
C.D. California,
Southern Division.

March 13, 2012.

John Paulo Schafer, Manderson Schafer & McKinlay, Scott Howard Sims, Eagan Avenatti, LLP, Newport Beach, CA, Roxanna Hope Watrous, Bryan Cave LLP, Irvine, CA, for Plaintiff.

Marcus M. Kerner, AUSA–Office of U.S. Attorney, Santa Ana, CA, for Defendants.

## MEMORANDUM OF DECISION

CORMAC J. CARNEY, District Judge.

## I. INTRODUCTION

On October 14, 2010, Plaintiff Jean Muth filed a complaint seeking review of the determination of Defendant Kathleen Sebelius, Secretary of Health and Human Services ("the Secretary"), that Ms. Muth's Medicare Advantage Plan ("MA plan") provided by Aetna Medicare Golden Choice ("Aetna") did not cover requested prosthodontal services. Ms. Muth's complaint specifically challenges the decision of the Medicare Appeals Council ("MAC") agreeing with the Secretary and denying coverage of her claim. The parties appeared for oral argument on November 14, 2011, before Judge Andrew J. Guilford. After the hearing, Judge Guilford recused himself and the case was transferred to this Court. Upon review of the parties' papers, the administrative record, and the transcript of the hearing before Judge Guilford, the Court AFFIRMS the decision of the Secretary and the MAC.

## II. BACKGROUND

Ms. Muth is a member of Aetna Medicare Golden Choice, a private insurer who contracts with Medicare to provide coverage for services to individuals eligible for Medicare. (Administrative Record ("A.R."), at 6.) Ms. Muth's MA plan covers services that are covered under Medicare Part A and B, and she also has a dental rider with Aetna.[1] (Id.) As noted by the MAC, and undisputed by the parties, Ms. Muth has "a complex medical history, including breast and brain cancer, with radiation therapy, chemotherapy, and a mastectomy, all in 2007." (Id. at 7.) Ms. Muth also suffers from valvular heart disease. (Id. at 35, 37.) In 2009, two years after Ms. Muth's cancer treatment, Ms. Muth's general dentist recommend she see a prosthodontist. The MAC explained in its decision that "[p]rosthodontics is the branch of dentistry dealing with replacement of missing teeth, as by bridges or artificial dentures." (Id.) (citing Webster's New World Dictionary 1080 (1988).) The administrative law judge ("ALJ") held that Ms. Muth's dental problems were the result of chemotherapy and radiation.[2] (Id. at 9.)

---

[1]. Ms. Muth's dental rider provides that Ms. Muth receive prosthodonture treatment at the negotiated rate, which she must pay herself. Aetna provides no reimbursement for the treatment.

[2]. The MAC did not specifically adopt this finding of the ALJ, but made no finding regarding the cause of Ms. Muth's dental problems. The Secretary concedes that Ms. Muth's dental problems may well have been the result of her chemotherapy and radiation, but even so, asserts that the requested services would not be covered. Accordingly, the Court assumes, without deciding, that Ms. Muth's claim that chemotherapy and radiation treatments caused her dental problems is accurate.

In February of 2009, Ms. Muth received a referral to a prosthodontist for a "comprehensive prophylaxis, dental exam, full mouth x-ray, jaw joint x-rays, and a comprehensive treatment plan." (*Id.* at 7.) On April 15, 2009, Ms. Muth's primary care physician requested approval from Monarch Healthcare, Ms. Muth's primary care group, for the referral. Ms. Muth asserts that she requested coverage for not only this initial consultation, but also for the treatment itself.[3] Monarch Healthcare initially denied the referral as an excluded dental service, and again denied coverage on internal appeal. (*Id.*) Ms. Muth's case was referred to the Independent Review Entity for reconsideration, and her claim was again denied. (*Id.* at 8.) Ms. Muth then sought review from the ALJ who determined that Aetna's terms of coverage, as set forth in the Evidence of Coverage ("EOC"), extended beyond the limits of Medicare coverage. (*Id.* at 104.) The ALJ found that there was ambiguity in the MA plan as to whether Ms. Muth's prosthodontic services were covered, and construed that ambiguity against the MA plan. The ALJ also held that her teeth problems were a complication of mastectomy and covered under the Women's Health and Cancer Rights Act ("WHCRA"). "The ALJ ordered the MA plan to cover the requested consultation and treatment from a network prosthodontist under the plan's medical benefit, not the dental rider." (*Id.* at 9.)

The MA plan filed a request for review by the MAC. On August 10, 2010, the MAC reversed the decision of the ALJ.

Specifically, the MAC held that the general Medicare dental exclusion, 42 U.S.C. § 1395y(a)(12), and related regulations and guidelines warranted denial of coverage. The MAC further held that the EOC clearly limited coverage to mirror Medicare, and the ALJ erroneously interpreted the EOC to provide coverage beyond that provided by Medicare. (*Id.* at 17.) The MAC also held that Ms. Muth's dental problems were not a physical complication of mastectomy and, thus, not covered by the WHCRA. (*Id.*) Finally, the MAC held that the ALJ improperly reached the issue whether treatment itself was covered.

## III. ANALYSIS

■■■ The Court has the authority to review the Secretary's decision denying Plaintiff Medicare benefits pursuant to 42 U.S.C. §§ 405(g), 1395ff(b); *Vista Hill Found., Inc. v. Heckler,* 767 F.2d 556, 558 (9th Cir.1985). The Court has the authority to affirm, modify, or reverse the Secretary's decision "with or without remanding the cause for rehearing." 42 U.S.C. 405(g). Here, the MAC's decision constitutes the Secretary's final decision. *Id.;* 42 C.F.R. § 405.1130 ("The MAC's decision is final and binding on all parties unless a Federal district court issues a decision modifying the MAC's decision or the decision is revised as the result of a reopening in accordance with § 405.980.") Under 42 U.S.C. § 405(g), the Secretary's final decision shall be disturbed only if the factual findings underlying the decision are not supported by substantial evidence or if the Secretary applied incorrect legal stan-

---

**3.** The MAC found that the ALJ improperly decided the issue of whether the treatment itself was covered. The MAC held that only the consult and treatment plan were requested from the insurer and the internal appeals process. Ms. Muth contests this holding, asserting that the ALJ correctly found that Ms. Muth had requested both treatment and consultation from the MA Plan. Because this Court holds that both treatment and consultation would be excluded from coverage under Medicare, it need not determine whether the MAC's determination was supported by the record. For the purposes of this order, the Court assumes, without deciding, that Ms. Muth's assertion is accurate.

dards. "Substantial evidence is defined as more than a mere scintilla but less than a preponderance." *Tackett v. Apfel,* 180 F.3d 1094, 1098 (9th Cir.1999). "[A] court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion.'" *Id.* (quoting *Penny v. Sullivan,* 2 F.3d 953, 956 (9th Cir.1993)).

■ Where the Secretary interprets a statute, the Court must first consider "whether Congress has directly spoken to the precise question at issue." *Chevron U.S.A. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 842, 843 n. 9, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). If Congress has not directly addressed the precise question, "the court does not simply impose its own [interpretation] on the statute.... Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's [interpretation] is based on a permissible construction of the statute." *Id.* at 843, 104 S.Ct. 2778. "The court need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question initially had arisen in a judicial proceeding." *Id.* at 843 n. 11, 104 S.Ct. 2778. Accordingly, the Court is to accord "considerable weight" to the Secretary's construction, and the Court must adopt the "principle of deference to administrative interpretations." *Id.* at 844, 104 S.Ct. 2778. If the Secretary's "construction or application of the statute is arbitrary and capricious, or manifestly contrary to the statute, deference to the administrative interpretation is inappropriate." *Guadamuz v. Bowen,* 859 F.2d 762, 768 (9th Cir.1988) (citing *Chevron,* 467 U.S. at 844, 104 S.Ct. 2778). An interpretation of a statute arrived at after formal adjudication, and contained in the adjudi-

cator's decision, constitutes an interpretation by the Secretary entitled to *Chevron* deference. *See Christensen v. Harris Cnty.,* 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000).

**A. Applicability of 42 U.S.C. 1395y(a)(12)**

■ Ms. Muth's asserts that "[t]he MAC erred in holding that the Section 1395y(a)(12) exclusion applies" to Ms. Muth's case. Contrary to this assertion, the MAC did not improperly apply law in finding that this exclusion was applicable. Section 1395y(a)(12) excludes coverage "for services in connection with the care, treatment, filling, removal, or replacement of teeth or structures directly supporting teeth." Like the Seventh Circuit, the Court finds that the statute itself is ambiguous. More specifically, the Court finds that the statute is ambiguous with respect to the meaning of the phrase "in connection with" as it relates to Ms. Muth's case. The Court must, therefore, determine whether the Secretary's interpretation, as set forth in the MAC's decision, is entitled to *Chevron* deference. Ms. Muth asserted that the exclusion did not apply to her because her requested prosthodontic treatment was "in connection with" her cancer. She based this assertion on the fact that the dental disease giving rise to the need for prosthodontic services was caused by her chemotherapy and radiation treatments. The MAC found that the requested services were not covered because the statute and related regulations look to the nature of the service performed, and not the cause of the condition for which services are sought, to determine whether the exclusion applies. The MAC held that Section 1395y(a)(12) "applies without regard to the cause of any dental problems" and noted that "[m]any medical conditions or treatment for those conditions adversely impact dental health." (A.R., at 15.) The

MAC explained that "Congress has not made an exception to the general dental exclusion for 'medical' causes of dental decay." (*Id.*) The MAC's interpretation is neither arbitrary and capricious nor manifestly contrary to the statute. In fact, the interpretation is consistent with and guided by the interpretation of the statute condoned by numerous other courts including another Central District of California court and the Seventh Circuit. *See Wood v. Thompson,* 246 F.3d 1026 (7th Cir.2001); *Chipman v. Shalala,* 90 F.3d 421 (10th Cir.1996); *Maggio v. Shalala,* 40 F.Supp.2d 137 (W.D.N.Y.1999); *Bick v. Sec'y of Health and Human Servs.,* No. CV 95–0313–ABC, 1996 WL 393656 (C.D.Cal. Apr. 8, 1996). In particular, in *Bick,* the court approved the Secretary's decision that root canal procedures to treat gum damage caused by oncological radiation treatments were excluded under Section 1395y(a)(12). 1996 WL 393656, at *3–*4. Even *Maggio,* in which the court reversed the MAC, supports the Secretary's interpretation in Ms. Muth's case. In *Maggio,* the plaintiff received a cementing of crowns and a partial denture under the supervision of his oncologist by a cancer dental surgeon while in the process of undergoing treatment for leukemia because his dental problems prevented him from obtaining the proper nutrition to tolerate his cancer treatment. 40 F.Supp.2d at 140–41. Notably this treatment did not qualify as being "in connection with" cancer treatment and was subject to the statutory exclusion. *Id.* Instead, the Court found that an exception to the exclusion

created by the Secretary in the Medicare Carriers Manual applied.[4]

Ms. Muth also asserted in her objection to the MAC's proposed decision that the treatment was "in connection with" her valvular heart disease because her dental infection placed her at risk of an infection on her heart valves. This appears to be the first time that Ms. Muth made this argument, as the only evidence cited by Ms. Muth that the treatment sought was in any way related to valvular heart disease are two doctors' opinions dated not only after the ALJ issued its opinion and Ms. Muth appealed to the MAC, but after the MAC issued its proposed decision. (A.R., at 35, 37.) It is not clear, therefore, whether this Court may consider this argument because it may have been improperly raised before the MAC, and the MAC does not directly reference Ms. Muth's arguments regarding her heart disease in its decision. The Court need not make this determination because, while not directly addressing this issue, the MAC implicitly rejected a definition of "in connection with" that would consider the reason treatment is necessary by continuing to deny coverage. Moreover, the MAC cited to *Wood v. Thompson,* 246 F.3d 1026 (2001), and stated that in that case "[t]he Court of Appeals specifically held that extractions to prevent heart valve complications were not covered, and fell within the scope of 'routine' dental care." (A.R., at 16.) In rejecting Ms. Muth's argument by adopting the holding of *Wood,* the MAC's implicit holding that the definition of "in

---

**4.** The Medicare Carrier's Manual, Section 2136 sets forth the statutory exclusion and then creates an exception to this rule for a "non-covered procedure or service . . . performed by a dentist as incident to and as an integral part of a covered procedure." Ms. Muth does not argue that this exception applies to her case. However, even if she had, under the precedent discussed above it would

be inapplicable because there is no evidence that her requested dental treatment is being sought concurrently with treatment by covered services for cancer or any other condition. Such a finding would be supported by *Bick,* which held that this exception did not apply to dental treatments performed years after cancer treatment. 1996 WL 393656, at *3–*4.

connection with" did not include consideration of what made timely treatment necessary was not an improper application of law.

Ms. Muth contends that the MAC erred in failing to apply proper statutory interpretation principles in its determination that the exclusion applied because it failed to construe the exclusion narrowly, citing to the New Jersey district court. *See Monmouth Med. Ctr. v. Harris*, 494 F.Supp. 590, 598 (D.N.J.1980). This argument is without merit. The MAC interpreted 1395y(a)(12) consistently with the legislative history of the statute, the Secretary's guidelines, and with the decisions of other courts including the Central District of California and the Seventh Circuit. All of these sources contemplate a reading of the statute and an interpretation of covered services based upon the nature of the service performed, not the condition giving rise to the need for treatment. There is no indication that, nor does Ms. Muth explain how, this interpretation of the statute is impermissibly narrow. Ms. Muth merely offers the conclusory assertion that the MAC's interpretation was narrow and thus impermissible, and that an interpretation of the statute which provided her coverage would be appropriately broad. This is insufficient to demonstrate that both the MAC and the previous courts to examine the issue created an interpretation of the statute which is not entitled to *Chevron* deference.

Ms. Muth next argues that the MAC improperly applied law by ignoring a guideline that she asserts would mandate coverage, Section 70.2 of the Medicare General Information, Eligibility, and Entitlement Manual ("MGIEEM"), Pub. 100–01, ch. 5. Ms. Muth's assertion that this guideline mandates coverage is without merit. Based on its own language, Section 70.2 is plainly intended to merely define under what conditions a dentist constitutes a physician under the Medicare statutes and regulations. Further, Section 70.2's language indicates that it does not operate to expand the coverage set forth in the statute or regulation. It states "[b]ecause the general exclusion of payment for dental services has not been withdrawn, payment for the services of dentists is also limited to those procedures which are not primarily provided for the care, treatment, removal, or replacement of teeth or structures directly supporting the teeth." MGIEEM § 70.2. Ms. Muth relies on the phrase "primarily provided for" but provides no evidence that this phrase means anything different than "in connection with," and, in fact, the Section's reference to the general dental exclusion indicates that the phrases ought to be interpreted identically. Accordingly, this guideline does not render the MAC's decision an improper application of law.

Finally, Ms. Muth asserts that the MAC erred in ignoring the legislative history of the statute. More specifically, Ms. Muth asserts that the legislative history of the exclusion indicates that was only intended to apply to routine dental care. Again, the cited legislative history does not indicate that the Secretary, the MAC, and the courts to rule on Section 1395y(a)(12) interpreted the statute in a manner that would mandate reversal by this Court. The Senate Report states:

> The committee bill provides a specific exclusion of routine dental care to make clear that the services of dental surgeons covered under the bill are restricted to complex surgical procedures. Thus, payment would be made under the supplementary plan for the physician's services connected with the diagnosis of a specific complaint and the treatment of the ailment, but a routine annual or semiannual checkup would not be cov-

ered.... [R]outine dental treatment—filling, removal, or replacement of teeth or treatment of structures directly supporting teeth—would not be covered." S. Rep. 89–404 (1965), reprinted in 1965 U.S.C.C.A.N. 1943, 1989–90. This portion of the legislative history supports the "nature of the service itself" interpretation of Medicare exclusions, because it too is focused not on the cause of the condition as making a service "routine" or extraordinary, but instead the nature of the procedure as well. Additionally, as noted by the MAC, that unlike provisions excluding routine checkups, Congress did not limit the exclusion to "routine annual or semiannual checkups," but instead passed a statute with a far more general dental exclusion. (A.R., at 16.)

Moreover, Ms. Muth's argument is not persuasive because the very section of the legislative history she cites in her opening trial brief indicates that the treatment she seeks would be classified as a routine treatment of the "removal, or replacement of teeth or treatment of structures directly supporting teeth" and not a "complex surgical procedure" provided by a "dental surgeon." S. Rep. 89–404. As earlier noted, determinations under statute and regulation of Medicare coverage and exclusions are informed by the nature of the service performed rather than the cause of the condition or the medical necessity of such treatment. While the cause of Ms. Muth's condition, cancer, and the reason timely treatment is necessary, increased risk of heart disease complications, may not be routine, Ms. Muth has failed to demonstrate that the services themselves are not routine dental treatment as defined by the Senate Report.

## B. Insurance Contract Coverage

■ Ms. Muth asserts that the MAC erred in finding that her contract with Aetna, as set forth in the 2009 EOC, did not cover the prosthodontic services that she needed. (*See A.R.*, at 3297–414.) She asserts that the EOC can and does provide "benefits above and beyond those required to be provided under Medicare." (Pl.'s Opening Trial Br., at 12.) The MAC, however, found that the contract did not extend coverage beyond that provided under Medicare. This finding is supported by substantial evidence, specifically the multiple statements made in the EOC indicating that the benefits provisions are intended to mirror the benefits and exclusions of Medicare. (*See, e.g., A.R.*, at 3313 ("Our plan covers all of the medically-necessary services that are covered under Medicare Part A and Part B. Our plan uses Medicare's coverage rules to decide what services are medically necessary."), 3376 ("Services must be provided according to the Medicare coverage guidelines established by the Medicare Program."), 3397–98 ("explaining that '[r]outine dental care (such as cleanings, fillings, or dentures) or other dental services, unless as provided by a rider to this EOC [or N]on-routine dental services received at a hospital'" "aren't covered under the Original Medicare Plan or by our plan.").) Ms. Muth contends that the EOC is ambiguous and any such ambiguity must be construed against Aetna to afford her coverage. While Ms. Muth's brief cites proper authority with respect to the principles of contract interpretation, the EOC is not ambiguous with respect to how its terms should be interpreted. The EOC uses the model language of the Medicare statutes and regulations, and explicitly states that its terms of coverage and exclusions are intended to mirror Medicare. Ms. Muth's requested treatment is excluded from Medicare coverage under Section 1395y(a)(12). Accordingly, it is excluded under the Aetna contract as well.

## C. WHCRA Coverage

■ Ms. Muth asserts that the MAC erred in holding that the WHCRA, 29 U.S.C. 1185b, does not cover Ms. Muth's prosthodontic services. However, the MAC properly interpreted and applied the WHCRA and made a decision supported by substantial evidence, indeed by the very facts Ms. Muth asserts support her contentions that she is covered. The WHCRA requires coverage of "(1) all stages of reconstruction of the breast on which [a] mastectomy has been performed; (2) surgery and reconstruction of the other breast to produce a symmetrical appearance; and (3) prostheses and physical complications of mastectomy, including lymphedemas." 29 U.S.C. § 1185b. Aetna's explanation of the services it provides to comply with the act state that it covers services for "physical complications of all stages of mastectomy." (A.R., at 2579.) Ms. Muth acknowledges that her need for dental services is a result of chemotherapy and radiation, which she asserts is a "stage" of the mastectomy. The MAC disagreed, correctly explaining that radiation, chemotherapy, and a mastectomy are all modalities of treatment for cancer. (A.R., at 17.) Radiation and chemotherapy are not a stage of mastectomy and breast reconstruction, although they may be used concurrently to treat breast cancer. Accordingly, while dental damage from radiation and chemotherapy is a physical complication of cancer treatment, it is not a physical complication of a stage of a mastectomy. Thus, the MAC was correct in finding that the WHCRA and Aetna's coverage under that act did not cover Ms. Muth's dental treatment.

## D. Fifth Amendment Violation

■ Ms. Muth asserts that the Secretary's dental coverage policies violate the due process requirement of the Fifth Amendment by creating a classification that amounts to "discrimination that is 'so unjustifiable as to be violative of due process.'" *Schneider v. Rusk,* 377 U.S. 163, 168, 84 S.Ct. 1187, 12 L.Ed.2d 218 (1964) (quoting *Bolling v. Sharpe,* 347 U.S. 497, 499, 74 S.Ct. 693, 98 L.Ed. 884 (1954)). However, a classification that meets the [rational basis] test articulated in [*Dandridge v. Williams,* 397 U.S. 471, 487, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970),] "is perforce consistent with the due process requirement of the Fifth Amendment." *Richardson v. Belcher,* 404 U.S. 78, 81, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971). In *Belcher,* the Supreme Court explained that under the *Dandridge* test "[a] statutory classification in the area of social welfare is consistent with the [due process requirement] if it is 'rationally based and free from invidious discrimination.'" *Id.* (quoting *Dandridge,* 397 U.S. at 487, 90 S.Ct. 1153). More recent decisions by the Supreme Court and the Ninth Circuit continue to apply the rational basis standard to regulations under the Social Security Act, including Medicare statutes and regulations. *See Weinberger v. Salfi,* 422 U.S. 749, 768, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975); *Schweiker v. Wilson,* 450 U.S. 221, 234, 101 S.Ct. 1074, 67 L.Ed.2d 186 (1981); *Nat'l Med. Enters., Inc. v. Sullivan,* 916 F.2d 542 (9th Cir.1990). Ms. Muth asserts that the Secretary's coverage policies have created "different classifications of Medicare beneficiaries who need extraordinary, non-routine dental care," which lack a rational basis. (Pl.'s Opening Trial Br., at 14.) Specifically, Ms. Muth contends that the Secretaries policies have created the following favored class:

(1) those who need dental services "incident to and as an integral part of a covered procedure," but only if the dental services are performed at the same time and by the same dentist who performed the covered procedure or ser-

**1136**

vice; (2) those who need reconstruction of a ridge, if performed as a result of and at the same time as surgical removal of a tumor; (3) those who need extractions of teeth to prepare the jaw for radiation treatment; (4) those who need wiring of teeth or splints in connection with the reduction of a jaw fracture; [and] (5) those who need comprehensive dental workup prior to renal transplant surgery.

(*Id.* at 14–15 (citations omitted).) She does not assert that the Secretary's policies constitute invidious discrimination.

Contrary to Ms. Muth's assertion, the Secretary's policies do not violate due process as there is a rational basis for the exceptions to the blanket ban on dental services. As noted by the Secretary, "Congress decided that public funds should not be spent on dental care for Medicare beneficiaries—a decision clearly within its powers." (Def.'s Opening Trial Br., at 23.) Ms. Muth has not challenged the constitutionality of this Congressional decision to distinguish between medical and dental care, and neither the Secretary nor the Court have the authority to second guess this decision "unless the choice is clearly wrong, a display of arbitrary power, not an exercise of judgment." *Mathews v. De Castro,* 429 U.S. 181, 185, 97 S.Ct. 431, 50 L.Ed.2d 389 (1976).

The Secretary maintains that the exceptions created by her policies all have a common thread: they all follow a "temporal requirement—that dental care be provided as part of the same procedure as a covered service, or to prepare for a covered service," and they are all requisites to performing a covered service. (Def.'s Opening Trial Br., at 22.) The Secretary's policy of coverage is rational because "denying [dental] coverage under those circumstances would result in a denial for a covered medical service." The exceptions

therefore advance a permissible legislative goal of providing medical treatment to Medicare recipients, as lack of dental service in these cases would operate as a barrier to necessary, covered medical treatment. Ms. Muth has provided no evidence to demonstrate that failure to cover her requested dental services prevents her from receiving necessary, covered, medical services, or that the service she requested was incident to and an integral part of a concurrent, covered medical procedure. Accordingly, there is a rational basis for distinguishing Ms. Muth's case from those cases covered by the exceptions to the dental exclusion.

## IV. CONCLUSION

For the foregoing reasons the Court AFFIRMS the decision of the Secretary and the MAC.